IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **G&G CLOSED CIRCUIT EVENTS, LLC,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | Case No. SAG-23-2860 |
| v. | * | |
| | * | |
| **GREAT FOOD CHOICES II, LLC,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Currently pending is a Motion for Default Judgment filed by Plaintiff G&G Closed Circuit Events, LLC ("G&G") against Defendants Great Food Choices II, LLC t/a Grind & Wine t/a Grind & Wine Café ("Grind & Wine") and Kelly R. Carter (collectively "Defendants"). ECF 21. Defendants did not file an opposition, and the deadline to do so has now passed. *See* Loc. R. 105.2.(a) (D. Md. 2023). This Court has reviewed G&G's motion, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons discussed below, G&G's Motion for Default Judgment will be granted in part and denied in part as to Defendant Grind & Wine and denied in full as to Defendant Carter. Default judgment will be entered against Grind & Wine in the total amount of $6,840.85 instead of the $22,648.81 requested by G&G.

**I.     BACKGROUND**

G&G had exclusive nationwide commercial distribution (closed-circuit) rights to the *Gervonta Davis v. Ryan Garcia Championship Fight Program* which aired on Saturday, April 22, 2023 ("the Program"). ECF 2 ¶ 15. G&G offered sublicensing agreements to commercial entities to exhibit the Program in their establishments, in exchange for a sizeable licensing fee. *Id.* ¶ 16.

Grind & Wine, a commercial establishment in Randallstown, Maryland, broadcast the Program at its establishment without purchasing a license from G&G. *Id.* ¶ 18. A private investigator for G&G visited Grind & Wine during the Program and saw the Program on one or more televisions in the establishment. *Id.* ¶ 20. The investigator did not pay a cover charge to enter Grind & Wine. ECF 2-1 at 6–7. Between 29 and 34 patrons were in the establishment during his visit. *Id.* According to G&G, it would have charged Grind & Wine a licensing fee of $1,700 to broadcast the Program. ECF 21-4 ¶ 6. Carter is the managing member of Grind & Wine and is identified on its Alcoholic Beverage Retail License. ECF 2 ¶ 6–7. G&G alleges that it "is informed and believes" that on April 22, 2023, Carter "had the right and ability to supervise the activities" of Grind & Wine; "had the obligation to ensure that the Alcoholic Beverage Retail License was not used in violation of the law;" "specifically directed the employees" of Grind & Wine to unlawfully intercept the Program; and "had an obvious and direct financial interest" in Grind & Wine, including the broadcast of the Program. *Id.* ¶¶ 8–11.

G&G filed the instant action on October 23, 2023, ECF 2, asserting that both Defendants violated the Communications Act of 1934, as amended, 47 U.S.C. § 605 ("Communications Act") and the Cable and Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553 ("Cable Act"). ECF 2. G&G properly served Defendants with the summons and Complaint on November 12, 2023, and February 16, 2024, respectively. ECF 7, 13. Defendants have not responded to the Complaint and have not appeared in court. The Clerk entered default against both Defendants and notified the Defendants by mail. ECF 15, 19. Plaintiff filed the instant Motion for Judgment of Default against both Defendants on September 4, 2024, ECF 21.

## II.     STANDARD FOR DEFAULT JUDGMENT

While the Clerk has entered default pursuant to Federal Rule of Civil Procedure 55(a), it is left to the discretion of the Court to determine whether entry of default judgment is appropriate. *See S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). In reviewing a motion for judgment by default, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). It, however, remains for the Court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.* at 780-81; *see also* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688.1 (3d ed. Supp. 2010) ("Liability is not deemed established simply because of the default …. [T]he court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the Court determines that liability is established, it must then determine the appropriate remedy. *Ryan*, 253 F.3d at 780–81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). In so doing, the Court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court may also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("The court need not make this determination [of damages] through a hearing, however. Rather, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *see also Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civil No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining that, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the

3

damages requested"); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment where plaintiff submitted affidavits and electronic records establishing the amount of damages sought); *JTH Tax, Inc. v. Smith*, Civil No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

In sum, the court must (1) determine whether the unchallenged facts in Plaintiff's Complaint constitute a legitimate cause of action against each defendant, and, if they do, (2) make an independent determination regarding the appropriate relief.

### III.    DISCUSSION

#### A.    Liability

G&G seeks default judgment as to both its Communications and Cable Act claims, although it acknowledges it cannot recover under both acts and asks this Court to award recovery under the Communications Act. ECF 21-3 at 3–4.

To establish liability under Section 605 of the Communications Act, a plaintiff must show that "it had the exclusive commercial distribution rights" to a program and that each Defendant broadcast the program "without authorization." *J & J Sports Prods., Inc. v. Beer 4 U, Inc.*, Civ. No. TDC-18-2602, 2019 WL 5864499, at *3 (D. Md. Nov. 8, 2019). Viewing the facts alleged in the Complaint as true and in the light most favorable to Defendants, Grind & Wine violated the Communications Act because it broadcast the Program in its establishment without obtaining a license from G&G. *See G&G Closed Circuit Events, LLC v. Blow Fish House, Inc.*, Civ. No. 8:23-

4

00652-PX, 2023 WL 7016350, at * 2–3 (D. Md. Oct. 25, 2023); *Beer 4 U*, 2019 WL 5864499, at *4; *J&J Sports Prods. Inc. v. Get Away Lounge, Inc.*, No. TDC-13-3064, 2015 WL 4638060, at *2–3 (D. Md. July 31, 2015).

G&G also seeks liability against Defendant Carter, based on its "information and belief" allegations regarding her involvement at Grind & Wine. As Judge Xinis reasoned in *Blow Fish House:*

> "An allegation made 'on information and belief' does not serve as a reliable foundation upon which to predicate a final judgment." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 543 (D. Md. 2011) (quoting *Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 4–5 (2d Cir. 1970) (vacating default judgment that was based on factual assertions made "on information and belief")); *see also Educational Credit Management Corp. v. Optimum Welding*, 285 F.R.D. 371, 374 (D. Md. 2012) (finding a "deficiency of proof" where elements necessary to establish liability are alleged "upon information and belief"); *Int's Painters & Allied Trades Indus. Pension Fund v. Royal Int'l Drywall & Decorating, Inc.*, No. SAG-18-3648, 2019 WL 5576961, at *4 (D. Md. Oct. 29, 2019) (following *Balt. Line Handling* and *Oceanic Trading).* This is especially so when no facts support the conclusory averments. *See Optimum Welding*, 285 F.R.D. at 374; *see also Balt. Line Handling*, 771 F. Supp. 2d at 544–45 (denying motion for default judgment because supporting allegations were not "well-pleaded"). Averments based on G&G's "informed" "belie[f]" is the functional equivalent of averments based on "information and belief"; they compel no different result.

2023 WL 7016350, at *3 n.1. Like in *Blow Fish House,* the investigator at the Grind & Wine offered no facts suggesting that Carter was present at the Grind & Wine, was in a position to supervise the television programming, or financially benefited from the Program on display. The Complaint is simply devoid of any actual facts demonstrating Carter's involvement in the Communications Act violation. The motion for default judgment is thus denied as to Carter.

    **B.**    **Relief**

G&G seeks statutory damages under the Communications Act, which permits a court to impose "a sum of not less than $1,000 or more than $10,000, as the court considers just," per violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). Courts in this district frequently look to the licensing

5

fee charged to broadcast the program as a benchmark for assessing statutory damages. *See, e.g.*, *Blow Fish House*, 2023 WL 7016350, at *3 (collecting cases)*, Joe Hand Promotions, Inc. v. Aguilar*, Civ. No. TDC-19-0458, 2019 WL 4071776, at *3 (D. Md. Aug. 29, 2019). Here, that fee would be $1,700.00.[1] ECF 21-4 ¶ 6.

In this district, courts generally premise an award of enhanced damages on a multiplier applied to the statutory damages. The amount of the multiplier is determined by the severity of the defendant's infraction. Factors the Court can consider include: "1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks." *J & J Sports Prods., Inc. v. Quattrocche,* Civ. No. WMN-09-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010). Here, Grind & Wine's infraction is not particularly severe, with the only aggravators being the apparently willful display of the Program and a single advertisement placed on Grind & Wine's Facebook page. G&G offers no evidence of any admission fee or cover charge, any substantial unlawful monetary gains (given the relatively sparse crowd in the establishment), any repeat violations by Grind & Wine, or any increased food and drink costs during the Program. In this case, then, a one-time multiplier will be sufficient to deter future violations for this establishment's first offense. This Court will therefore impose enhanced damages in the amount of $1,700.00 to be added to the like sum of statutory damages imposed.

---

[1] This Court rejects G&G's suggestion that it should instead calculate statutory damages by assuming that each individual patron at the Grind & Wine would have ordered its residential license package to view the Program from home. G&G's proposal requires a relatively unrealistic set of assumptions: that each and every patron was at the Grind & Wine because of the Program and not the culinary or beverage offerings, that each patron would have been willing to pay $84.99 to view the Program in their home, and that none of the patrons would have watched the Program collectively, either in a private home or some other establishment. Use of the actual commercial licensing fee Grind & Wine would have paid leads to a far more logical result.

Finally, G&G seeks its reasonable attorney's fees and costs, which the Communications Act allows a plaintiff to recoup. *See* 47 U.S.C. § 605 (e)(3)(B)(iii). This Court employs the lodestar method to calculate reasonable attorney's fees, which involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998). In this case, in two separate filings, G&G requests a total of $4010.00 in attorney's fees for its two attorneys, Richard M. Kind, Esq. and Ryan Carey Kind, Esq. (collectively "the Kinds"). ECF 21, 22. This Court finds that the hourly rate requested by each of those attorneys in both filings is reasonable.

However, after review of the original Motion for Default Judgment, ECF 21, and the amended Motion, ECF 22, along with filings in several near-identical cases by these same attorneys over the years, this Court does not conclude that the requested number of hours expended in this case is reasonable. While some individual investigation, correspondence, and work is required in every case, these two attorneys have filed an exorbitant number of cases of this nature.[2] The filings in their cases, from the Complaints to the default judgment-related motions (and certainly the more ministerial filings), contain a significant quantity of boilerplate language simply copied over from one case to the next.

In particular, the Complaint in this case is identical, except for 1) the names and addresses of the defendants, 2) the identification of the licensed program, and 3) the identification of the investigator, to a complaint these lawyers filed in 2018 in *J&J Sports Productions, Inc. v. El Tapatio, Inc.*, Civ. No. 8:18-01005-TDC, ECF 1. It is also identical, except for those same few items, to complaints more recently filed in at least two other cases in this Court: *G&G Closed*

---

[2] According to Court records, attorney Richard M. Kind has filed well over 200 similar cases in this Court, beginning in 2007. Attorney Ryan Carey Kind has filed 54 similar cases in this Court since 2015.

*Circuit Events, LLC v. Blow Fish House, Inc., et al.*, Civ. No. 8:23-cv-0652-PX, and *G&G Closed Circuit Events, LLC v. Sky High Sports & Entertainment LLC*, Civ. No. 8:23-cv-02820-PX. The complete and total duplication in each of these complaints is especially evident from common errors, such as the failure to select between the "Baltimore/Greenbelt Division" as the proper site of venue in paragraph 4 of all of the complaints. Preparation of the later complaints, then, would be as easy as using "find and replace" to modify several items in the 2018 *El Tapatio* complaint. And in *El Tapatio*, the statement of attorney's fees filed by these same attorneys reflects that even the 2018 version was simply a modification of earlier work. The fee petition states that the attorneys spent just 0.8 hours to "draft and file complaint" in *El Tapatio,* consistent with a reasonable amount of time to find and replace those few identifying items in an existing template. *El Tapatio*, ECF 15-12 at 1.

Somehow, however, in the intervening years, the amount of time these attorneys are claiming for preparation of their identical complaints has grown exponentially. In *Blow Fish House*, in March of 2023, drafting and filing that same complaint (and emailing the client) took the Kinds 2.5 hours. *Blow Fish House*, ECF 13-8 at 4. In *Sky High Sports*, in October of 2023, preparing and filing that same complaint (and emailing the client) took the Kinds a total of four hours over two days. *Sky High Sports*, ECF 14-9 at 4. And in the instant case, just a few days after the drafting and filing of the identical complaint in *Sky High Sports*, drafting and filing the same complaint again took four hours over two days (in the identical increments of time taken in *Sky High Sports*). ECF 21-9 at 4.

A similar inexplicable growth trend can be seen with respect to the preparation of the motions for default judgment in these cases. While not entirely identical, the motions for default judgment in the cases are duplicative to an extent, making it implausible that preparation of each

new motion would take significant time. In *El Tapatio* in 2018, preparation of the default judgment motion took just 1.5 hours. In *Blow Fish House*, in May–July of 2023, preparation of the motion took 1.9 hours spread over three different dates. But in *Sky High Sports* in March, 2024, it took a total of 3 hours.[3] ECF 14-9 at 4. And in this case, it took a total of 4 hours on two dates separated by more than a month. Again, the amount of hours claimed is growing significantly while the content is staying largely the same.

In this case (and in *Sky High Sports*), the Kinds filed an amended fee petition to try to provide additional specificity about the tasks they performed. This Court notes that, in addition to the questions about the overall accuracy of the petitions as summarized above, the Kinds now seek fees for a variety of clerical tasks that they performed themselves. "Tasks of a clerical nature are not compensable as attorney's fees.'" *Gates v. Barnhart*, 325 F. Supp. 2d 1342, 1348 (M.D. Fla. 2002) (quoting *Mobley v. Apfel*, 104 F. Supp. 2d 1357, 1360 (M.D. Fla. 2000)) (denying compensation for mailing a complaint and summons); *see also, e.g.*, *Magwood v. Astrue*, 594 F. Supp. 2d 557, 563 (E.D. Pa. 2009) (finding that clerical tasks should be excluded from the total attorney fee); *Chapman v. Astrue*, 2:08CV00040, 2009 WL 3764009, at *1 (W.D. Va. Nov. 9, 2009) (finding "purely clerical tasks are ordinarily a part of a law office's overhead and should not be compensated for at all"); *Barnett v. Colvin*, No. CIV. JKB-14-2588, 2015 WL 1736796, at *2 (D. Md. Apr. 15, 2015). A number of the full and partial entries on the Kinds' fee statement are strictly clerical in nature and do not require a licensed attorney to perform the work. *See, e.g.*, ECF 21-9 at 4 entries at 10/23/2023 ("scan and copy documents); 10/23/23 ("open new E-file case, Efile

---

[3] One of the dates in the *Sky High Sports* attorney fee statement is incomplete ("3/xx/24"), further calling into question the accuracy of the timekeeping. *Sky High Sports,* ECF 14-9 at 4.

documents, review our prior efilings to ensure consistency"); 11/12/2023 and 11/21/2024 ("pay process server invoice"). No party should pay for clerical work at $350 per hour.

Ultimately, because this Court cannot complete its loadstar analysis by relying on the Kinds' fee statement for the reasons described above, this Court finds that an award for six hours of attorney time, the same quantum deemed reasonable in the lodestar analysis in the *Blow Fish House* case, is a reasonable (if not overly generous) fee award in this case. This Court will add one additional hour (0.5 hours for each attorney), recognizing that the instant case presented some service of process issues requiring some additional effort and filings. With that adjustment, the hours expended in the near-identical *Blow Fish House* case constitute a fair approximation of the time it would take attorneys at this extraordinary level of experience to litigate a default case of this minimal procedural complexity. This Court will therefore award attorney's fees in the amount of $2,150.00, representing 4 hours at the rate of $350.00 per hour for Richard M. Kind, Esq. and 3 hours at the rate of $250.00 per hour for Ryan C. Kind, Esq., plus their incurred costs in the amount of $1,290.85.

A separate Order follows, granting default judgment against Defendant Grind & Wine in the total amount of $6,840.85.

Dated:  March 5, 2025                                           /s/
                                                        Stephanie A. Gallagher
                                                        United States District Judge